UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Zachary Powell, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) Principal case pending in the United ) States District Court for the Southern |
| UHG I LLC, | ) District of California, Case No. 3:23-cv- ) 00086-DMS-KSC ) |
| Defendant. | ) |

**NON-PARTIES CNU ONLINE HOLDINGS, LLC AND CNU OF CALIFORNIA, LLC'S MOTION TO QUASH SUBPOENAS**

Non-party subpoena respondents, CNU Online Holdings, LLC ("CNU Holdings") and CNU of California, LLC ("CNU of California") (CNU Holdings and CNU of California collectively, the "CNU Entities"), respectfully move under Federal Rules of Civil Procedure 26(b) and 45(d) to quash the subpoenas served by Plaintiff Zachary Powell seeking documents and testimony in connection with a California lawsuit. The subpoenas, copies of which are attached as Exhibits A and B, are deficient and should be quashed for a number of reasons:

(1) the subpoenas are procedurally improper because they seek compliance beyond the geographic limits specified in Rule 45(c), and Plaintiff failed to tender witness fees as required under Rule 45(b)(1);

(2) the subpoenas are overbroad and unduly burdensome because they prematurely seek documents and testimony related to an amended pleading when the defendant in the underlying action has filed a motion to compel arbitration, a motion to extend discovery dates, and a motion to stay discovery pending resolution of the arbitration motion;

(3) the subpoenas are overbroad and unduly burdensome because they seek documents and testimony for a nearly seven-year period that are proprietary and irrelevant to Plaintiff's operative claim that he was subjected to unfair debt collection activity; and

(4) the subpoenas are overbroad and unduly burdensome because they seek documents already within Plaintiff's or Defendant's possession, or better obtained through party discovery.

For these reasons, discussed in detail below, the Court should quash Plaintiff's subpoenas.

## BACKGROUND

Around September 13, 2018, Plaintiff entered into a $3,500 loan agreement with CNU of California. (Complaint, S.D. Cal. Case No. 23-cv-0086, ECF 1 ¶ 22.) CNU of California assigned the debt to the defendant in this case, UHG I, LLC. (*Id.* ¶ 24.)

On January 17, 2023, Plaintiff commenced the underlying lawsuit against UHG I, LLC in the Southern District of California. (S.D. Cal. Case No. 23-cv-0086, ECF 1.) Plaintiff claims that UHG violated the California Unfair Competition Law, the federal Fair Debt Collection Practices Act, and California's Rosenthal Fair Debt Collection Practices Act by attempting to collect a loan with an unconscionable interest rate. (*Id.* ¶¶ 27, 43, 49, 56, 65, 70.) He brings these claims individually and on behalf of a putative class. (*Id.*)

On April 24, 2023, Plaintiff filed a motion for leave to file an amended complaint, (ECF 12), which was granted on August 4, 2023 (ECF 19). The amended complaint was filed on August 8, 2023 (ECF 20), and adds allegations of additional violations of debt-collection laws by UHG based on the theory that UHG did not receive a valid assignment of Plaintiff's loan agreement. (ECF 20 ¶¶ 27-33.) Plaintiff alleges that while CNU of California originated the loan, the assignment to UHG was invalid because it was signed by CNU Holdings. (*Id.*) UHG opposed the proposed amendment as futile because the assignment documents demonstrate that CNU of California designated CNU Holdings as its agent for purposes of executing the assignment. (ECF 13.) In other words, there is no issue with the assignment of Powell's loan.

Important to this motion, the parties' filings in connection with the motion to file the amended complaint indicated that **the parties** to the dispute **are in possession** of the loan

2

agreement,[1] the assignment documents, and other documents and information sufficient to evaluate whether a valid assignment occurred and whether the terms of the loan violate state law. (ECF 13 at pp. 2-3, 5-6; ECF 13-2 at pp. 19-20.)

Setting aside that Plaintiff already has and/or can obtain information regarding the loan and assignment of the loan without the need for third party discovery, the subpoenas are improper and/or premature for additional reasons.

*First*, the subpoenas are invalid on their face as each demands compliance beyond the geographic limits specified in Rule 45(c) and because Plaintiff failed to tender fees as required under Rule 45(b)(1).

*Second*, Plaintiff's claims in the underlying action are subject to mandatory arbitration under the arbitration clause in the loan agreement, which UHG has moved to enforce. On August 9, 2023, UHG filed a motion to compel arbitration, and argued that under the terms of the loan agreement, this dispute is subject to arbitration and should not proceed in court. (ECF 21.) On August 11, 2023, the parties to the lawsuit filed a joint motion to extend discovery dates by 90 days. (ECF 22.) Finally, UHG has requested to stay discovery pending the adjudication of the arbitration motion. (ECF 27.) If UHG's motion to compel arbitration is successful, the subpoenas issued to the CNU Entities will be invalid.

*Third*, the subpoenas to non-parties CNU Holdings and CNU of California seek discovery that goes far beyond the pending claims. The two document subpoenas are identical in substance, and seek the following documents covering thirteen topics ***over a nearly seven-year period***:

1. ***All*** documents and communications relating to services provided by You to Plaintiff.

---

[1] Notably, the loan agreement contains an arbitration provision and class action waiver. As a result, Plaintiff's claims are subject to arbitration on an individual basis.

2. *All* contracts and agreements between You and Defendant related to the process of transferring consumer debt.

3. *Any* agency agreements between CNU Holdings, LLC and CNU of California, LLC as it related to assigning the debt collection rights of CNU of California.

4. *All* documents and communications relating to Plaintiff and his loan application.

5. *All* communications between You and Plaintiff.

6. *Any* documents related to Plaintiff's alleged debt with Defendant.

7. *Any* document relied on in transferring Plaintiff's debt.

8. *All* documents showing the policies and procedures for processing consumer loan applications.

9. *All* policies and procedures regarding informing consumers of the interest rate on their loans.

10. *All* policies regarding the ability of consumers to negotiate their interest rate on a particular loan.

11. *All* documents showcasing the interest rates the average consumer obtains on a standard loan.

12. *Any* and *all* educational materials that are provided to consumers during the loan application process.

13. *All* policies regarding the assignment of debts.

(Subpoenas, Exhibit A at 6-7; Exhibit B at 6-7) (emphasis added). These requests are overly broad on their face, and most of them are far afield from any of the debt-collection claims pending against UHG (or the assignment of Powell's loan—which documents are already in the parties' possession). The arbitration agreement and class action waiver in the loan agreement further negates this fishing expedition.

The subpoena topics designated for testimony are similarly problematic:

1. *All* documents produced in response to this subpoena.

2. The circumstances and details surrounding the creation of Plaintiff's loan on or about September 13, 2018.

3. The standard terms within the CNU of California's loan agreement that Plaintiff signed.

4. The factors to determining loan rates.

5. Your policies and procedures surrounding the processing of online loan requests.

6. *Any* educational material provided to loan applicants similar to Plaintiff.

7. The sale of the portfolio of loans that included Plaintiff's loan to another entity.

8. *Any* and *all* correspondence, communication, or contact between You and Plaintiff.

9. *Any* and *all* correspondence, communication, or contact between Defendant and YOU regarding the purchase of Plaintiff's loan.

10. The relationship between YOU and CNU of California, LLC.

(Exhibit A at 8; Exhibit B at 8) (emphasis added).

The subpoenas were served on the CNU Entities on July 14, 2023.[2] The CNU Entities served objections to the subpoenas on July 28, 2023. On August 16, 2023, Plaintiff's counsel confirmed that the depositions scheduled in the subpoenas would not take place on August 22 and 23, but would be rescheduled in the future. For the procedural, substantive, and practical reasons stated below, this Court should quash the subpoenas.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas and requires that the "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—

---

[2] Initially, the subpoenas were purportedly served on June 7, 2023, on the CNU Entities' registered agent, CT Corporation. But there were procedural issues with both subpoenas, which resulted in Plaintiff re-serving the subpoenas.

which may include . . . reasonable attorneys' fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). Accordingly, a court "must quash or modify a subpoena that" "(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter . . .; or (iv) subjects a person to undue burden." *Id.* § (d)(3)(A)(ii)-(iv). A court "may" also quash or modify a subpoena that requires "a person subject to or affected by a subpoena" to disclose "confidential research, development, or commercial information." *Id.* § (d)(3)(B)(i).

In addition, a court may quash or modify a subpoena if it seeks discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; [or] the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought." *Tresona Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 U.S. Dist. LEXIS 107723, at *7-8 (N.D. Ill. Aug. 17, 2015) (quoting Fed. R. Civ. P. 26(b)(2)).

## ARGUMENT

I. **This Court has jurisdiction and is the proper venue to hear this motion to quash because the place of compliance is in this District.**

This Court is the proper venue to consider this motion to quash because the place of compliance is in this District. The court for the district where compliance is required must enforce the duty to protect persons subject to a subpoena from undue burden or expense. Fed. R. Civ. P. 45(d)(1). Also, the court where compliance is required hears motions to quash or modify subpoenas. Fed. R. Civ. P. 45(d)(3)(A); *see Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 U.S. Dist. LEXIS 87004, at *5 (C.D. Ill. June 7, 2017) (the "court with jurisdiction to modify or quash a subpoena is the court for the district 'where compliance is required.'"). The 2013 amendments to Rule 45 "assured 'local resolution of disputes about subpoenas . . . [by] the

6

requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required.'" *Dou v. Carillon Tower/Chi. LP*, No. 18 CV 7865, 2020 U.S. Dist. LEXIS 166585, at *4, (N.D. Ill. Sept. 11, 2020) (citing *Raap*, 2017 U.S. Dist. LEXIS 87004 at *3). To "require non-parties to litigate disputes in a distant forum[] would defeat the amended rule's protective purpose." *Id.* at *4-5 (citing *Raap*, 2017 U.S. Dist. LEXIS 87004 at *3).

In *Raap*, a district court in Illinois found that it had jurisdiction to quash a third-party subpoena issued from a district court in Wisconsin, reasoning that the district "where compliance is required" is the location of the subpoenaed person or entity. 2017 U.S. Dist. LEXIS 87004 at *7.[3] The court found persuasive the cases holding that the place of compliance is where the recipient resides or works. *Id.* (collecting cases). It further explained that reading "place of compliance" as the place of the subpoenaed person is supported by the committee notes to Rule 45, which state that to "protect local nonparties, local resolution of disputes about subpoenas is assured" by the requirements of Rule 45(d) "that motions be made in the court in which compliance is required." *Id.* (citing Fed. R. Civ. P. 45, Advisory Committee Notes). In *Raap*, the court concluded that because the non-party who was subpoenaed was located and regularly transacted business in Springfield, Illinois, the Central District was the court in which compliance was required, and it had jurisdiction to hear a motion to quash the subpoena. *Id.* at *9.

Here, the CNU Entities' principal place of business is located at 175 West Jackson Boulevard, in Chicago, Illinois, and they regularly transact business in this District. (Declaration, Ex. C, ¶¶ 8-10.) Moreover, the documents being sought and the corporate representative who would compile the documents and review the subpoena responses is located in Chicago. (Ex. C ¶¶

---

[3] Courts from the jurisdiction where this case is pending, the Southern District of California, have also determined that the "place of compliance" in Rule 45(d) "depends on where the documents sought are located or where the nonparty subpoena recipient resides or works." *Hi Q, Inc. v. Zeetogroup, LLC*, No. 22 cv 1440, 2022 U.S. Dist. LEXIS 215133, at *20 (S.D. Cal. Nov. 29, 2022) (collecting cases).

7

11, 17-18.) The CNU Entities do not retain business records in California. (Ex. C. ¶ 11.) Thus, this Court has jurisdiction to hear the motion to quash.

II. **The Court should quash the subpoenas as procedurally invalid because they seek compliance beyond the geographic limits specified in Rule 45(c), and Plaintiff failed to tender fees as required under Rule 45(b)(1).**

As an initial matter, the subpoenas are invalid because they fail to satisfy two procedural requirements. First, under Rule 45(c), a subpoena for documents may require compliance within 100 miles of where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c). A subpoena for a deposition may require compliance within the same 100 mile radius or within the state where the person resides in the case of a party or a party's officer. *Id*. Here, the CNU Entities' place of business is in Chicago, Illinois. (Declaration, Ex. C ¶¶ 8-11.) Their business records that are sought by Plaintiff's subpoenas are located in Chicago, and their representatives with knowledge about the topics designated by the subpoenas for testimony are located in Chicago. (Ex. C ¶¶ 11, 17-18.) The document subpoena, however, calls for compliance in Costa Mesa, California, and the deposition subpoenas call for compliance in West Palm Beach, Florida, both of which are beyond the 100 mile radius provided under Rule 45(d). (Subpoenas, Exs. A and B p. 2; Declaration, Ex. C ¶¶ 13-15.)

This Court can take judicial notice of the relevant distances as computed by Google Maps, "a source whose accuracy cannot reasonably be questioned". *Hays v. Kimco Facility Servs., LLC*, No. 20 cv 5467, 2021 U.S. Dist. LEXIS 186800, at *13 n.2 (N.D. Ill. Sept. 29, 2021) (quoting *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1177 n.3 (7th Cir. 2013)). The distance from Costa Mesa, California to Chicago is approximately 2,000 miles,[4] and the distance from West Palm Beach,

---

[4] *See* Google Maps Search Result, located at https://www.google.com/maps/place/Costa+Mesa,+CA/@33.7029186,-118.0009491,10.37z/data=!4m6!3m5!1s0x80dcdf6ffc576f79:0xef018412d803c0da!8m2!3d33.6638439!4d-117.9047429!16zL20vMHIyYnY?entry=ttu (last accessed August 23, 2023).

8

Florida to Chicago is approximately 1,300 miles.[5] The subpoenas should be quashed for this reason alone.

In addition, Rule 45(b)(1) requires service of a deposition subpoena along with "fees for 1 day's attendance and the mileage allowed by law." Plaintiff did not tender the required witness or mileage fees along with the subpoenas (Declaration, Ex. C ¶ 16), which provides an additional basis for quashing the subpoenas based on the plain requirements of Rule 45.

### III. This Court should quash the subpoenas because they are overbroad and unduly burdensome for several reasons.

This Court should quash the subpoenas because they also impose an undue burden on non-parties CNU Holdings and CNU of California. A party issuing a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). A court is required to quash a subpoena that subjects a person to an undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv).

When determining whether the recipient of a subpoena is being subjected to an undue burden, courts consider a number of factors, including the recipient's status as a non-party, the relevance of the discovery, the subpoenaing party's need for the discovery, the breadth of the request, and the burden imposed on the subpoenaed party. *Ansur Am. Ins. Co. v. Borland*, No. 3:21 cv 59, 2022 U.S. Dist. LEXIS 91557, at *5-6 (S.D. Ill. May 20, 2022) (citing *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013)). Courts have consistently held that non-party status "is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 590 (N.D. Ill. 2020) (collecting cases).

---

[5] *See id.*, located at https://www.google.com/maps/place/West+Palm+Beach,+FL/@26.7421493,-80.2938573,11z/data=!3m1!4b1!4m6!3m5!1s0x88d8d5ccb595adc1:0x15efc7b51fe16bde!8m2!3d26.7153424!4d-80.0533746!16zL20vMHJxbF8?entry=ttu (last accessed August 23, 2023).

> A. The subpoenas prematurely seek documents and testimony about an amended complaint when there is a pending motion to compel arbitration and a pending motion to stay discovery.

As noted above, there are two motions pending that could drastically impact the California lawsuit: a motion to compel arbitration and a motion to stay discovery pending the outcome of the arbitration motion. (ECF 21; 27.) It would be an undue burden to require the CNU Entities to comply with subpoenas related to allegations that may not continue in the California court and which may be stayed pending the court's ruling on that motion. This Court should take case-specific circumstances such as these into account when weighing the needs of a case against the protections afforded to non-parties such as the CNU Entities. *See Papst Licensing GmbH & Co. KG v. Apple, Inc.*, No. 17 C 1853, 2017 U.S. Dist. LEXIS 51274, at *9-10 (N.D. Ill. Apr. 4, 2017) (recognizing that whether a subpoena imposes an undue burden is a case-specific inquiry involving factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed," with non-party status affording "special protections" against the time any expense of complying with subpoenas). There is simply no need to burden the non-party CNU Entities with discovery based on a pleading when there is a pending motion to arbitrate those claims and a motion to stay discovery in the meantime. The subpoenas should be quashed as premature.

> B. The subpoenas are overbroad and unduly burdensome because they seek documents and information for a nearly seven-year period that are wholly irrelevant to the allegations regarding the loan sale or Plaintiff's claims against UHG.

Plaintiff's amended complaint discusses the CNU Entities solely regarding authorization to transfer the loan. (ECF 20 ¶¶ 27-31.) These allegations are exceedingly narrow relative to the scope of documents and testimony sought by the subpoenas: including all documents showing

policies and procedures for consumer loan applications and online loan requests (Doc. Req. No. 8 and Topic No. 5); all policies and procedures regarding informing consumers about their interest rate and the ability of consumers to negotiate an interest rate (Doc. Req. 9); all documents showing the interest rate the average consumer obtains (Doc. Req. 11); testimony regarding the factors to determining loan rates (Topic No. 4); all educational materials given to consumers during the loan process (Doc. Req. No. 12 and Topic No. 6); and all policies regarding the assignment of debts (Doc. Req. No. 13). *See* Subpoenas, Exs. A and B.

Notably, **none** of these requests impact whether the interest rate expressed ***in Plaintiff's loan agreement*** was unconscionably high on its face—that can be discerned from the loan document itself. ***None*** of these requests even concern **Plaintiff**. These requests are so overbroad and intrusive into the business practices, policies, and procedures of two non-parties, that they are designed to harass. Indeed, the requests are so broad that their only practical purpose is to gather information about distinct, unpleaded claims against the CNU Entities. Angling for future claims against non-parties is beyond the scope of Rule 26, and the subpoenas must be quashed. *See Seong v. Joong-Ang Daily News, Inc.*, No. 15 cv 3761, 2018 U.S. Dist. LEXIS 248965, at *7 (N.D. Ill. July 27, 2018) (citing *Lifeguard Licensing Corp. v. Kozak*, No. 15 Civ. 8459, 2016 WL 3144049, at *2 (S.D.N.Y. May 23, 2016)) ("Rule 26 generally does not allow discovery relevant exclusively to an unpleaded claim.").

For instance, in *Tresona Multimedia, LLC v. Legg*, the court quashed a non-party subpoena because its requests "sweep too broadly" where it sought correspondence and communications from non-parties not related to the underlying case, and other subpoena requests had "no direct relationship to any named party" in the underlying action. No. 15 C 4834, 2015 U.S. Dist. LEXIS 107723, at *13 (N.D. Ill. Aug. 17, 2015); *see also City of Rockford v. Mallinckrodt ARD, Inc.*, No.

17 CV 50107, U.S. Dist. LEXIS 259038, at *11 (N.D. Ill. May 27, 2020) (quashing a subpoena request for all communications to a law firm about a particular drug from 2007 to the present because the subpoenaing party "failed to show how all communications from 2007 through the present are relevant to this litigation or necessary to defend the claims against them," as the case was filed in 2017, and prior lawsuits about the drug were not relevant, so "not only is the subject matter overbroad, so too is the time period.").

Similarly here, the subpoenas to the CNU Entities seek documents and information with no apparent relationship to the claims in the underlying case, which may be stayed or dismissed pending arbitration at any rate. The Court should therefore quash the subpoenas.

      C.    *The subpoenas seek proprietary and commercially sensitive information that does not meet the needs of the case.*

Not only is much of the information sought in the subpoenas irrelevant to ***Plaintiff's*** claims against UHG, many of the requests and topics seek confidential, proprietary, and/or commercially sensitive information. Among other things, ***Plaintiff*** seeks documents and testimony concerning the CNU Entities' confidential policies and procedures for processing loan applications, determining and communicating interest rates, and assigning/transferring debts over a ***seven year*** period. (Exs. A and B, p. 6 at Doc Request Nos. 7, 8-11, 13; p. 8 at Topic Nos. 4, 5, and 7.)

Such information is confidential, proprietary, and commercially sensitive in nature and should be shielded from disclosure. The CNU Entities derive substantial economic and strategic value from these policies and procedures and take substantial efforts to safeguard this information in order to maintain this competitive advantage. *See* Ex. C, ¶ 19; *Fulton v. Foley*, No. 17 cv 8696, 2019 U.S. Dist. LEXIS 209585, at *4 (N.D. Ill. Dec. 5, 2019) (quoting Fed. R. Civ. P. 45(d)(3)(B)(i) (holding that Rule 45 permits a court to quash a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information".). The CNU

Entities are not parties to this lawsuit. Their policies and procedures have nothing to do with the claims against UHG. Given that the CNU Entities are not parties to this lawsuit (and especially considering that this information is not necessary for Plaintiff to litigate or arbitrate his claims, on an individual basis, against UHG), the subpoenas are overreaching, harassing, and inappropriate for this additional reason.

> D. *The subpoenas are duplicative because the documents in the record show that relevant materials are available and have already been exchanged in party discovery.*

Finally, "[a] non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative." *Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 590 (N.D. Ill. 2020) (citing Fed. R. Civ. P. 26(b)(2)); *see also In re Heartland Inst.*, No. 11 C 2240, 2011 U.S. Dist. LEXIS 51304, at *11-13 (N.D. Ill. May 13, 2011) (quashing a subpoena and notice of deposition to third parties because it was not the least intrusive means of obtaining the information and "boarders on harassment" when the plaintiffs were seeking the same information from the party defendant).

For instance, in *Rossman*, the plaintiff issued a third-party subpoena to a company with whom the defendant provided project work. 467 F. Supp. 3d at 587. The subpoena sought communications and agreements between the third party and the defendant, documents describing the work performed between them, and documents reflecting payments made to the defendant. *Id.* at 587-88. The court noted that "it strikes even an impartial observer that *plaintiff ought to be getting a lot of this discovery . . . from the party he sued, instead of subpoenaing a non-party*." *Id.* at 588 (emphasis added). The court denied the plaintiff's motion to compel compliance with the non-party subpoena, reasoning that it "violated the basic prohibition against heaping unnecessary burdens on non-parties because the plaintiff did not exhaust other avenues before targeting a non-party to the lawsuit." *Id.* at 592; *see also Tresona Multimedia, LLC v. Legg*, No. 15 C 4834, 2015

U.S. Dist. LEXIS 107723, at *12 (N.D. Ill. Aug. 17, 2015) (quashing a subpoena against a non-party as duplicative because although the discovery process may allow the plaintiff to acquire the same documents for the underlying action, "the discovery process of non-party subpoenas does not automatically allow them to acquire these documents" from the non-party).

The Court should likewise rule here. The subpoenas seek documents and testimony concerning contracts and agreements between the CNU Entities and the defendant UHG (which UHG has (ECF 21-3 at 19-52)), documents relating to Plaintiff's debt (which UHG now owns), communications with or relating to Plaintiff and his loan application (which Plaintiff has or should have), and documents establishing the debt transfer to UHG. (Exs. A and B at p. 6 at Request Nos. 1, 2, 4, 5, 6, and 7; p. 8 at Topic Nos. 2, 3, 6, 7, 8, and 9.) That is, ***the subpoenas seek documents and information in which either UHG or Plaintiff has direct involvement***. As the court noted in *Rossman*, these requests are facially burdensome because Plaintiff already has some of this material and, in any event, should be seeking this information from the party it is suing (UHG), and not the non-party CNU Entities. 467 F. Supp. 3d at 592.

At its core, the amended complaint alleges that UHG violated various California consumer protections, the FDCPA, and California's Rosenthal Act because the annual percentage rate expressed in the loan was too high. (ECF No. 20, ¶¶ 49, 55, 63, 74.) To fully explore this legal issue, Plaintiff would simply need the loan agreement itself—which again, he has or should have, and is obtainable from UHG, the loan's current owner, in any event. Further, Plaintiff acknowledges in the amended complaint that he already obtained the bill of sale memorializing the debt's transfer from CNU of California to UHG. (ECF No. 20 ¶ 30.) In the face of such acknowledgment, there is no need for the subpoenas.

Instead, Plaintiff chooses to burden and inconvenience the non-party CNU Entities by seeking irrelevant documents and testimony from them, beyond the permissible scope of non-party discovery—and, in fact, even party discovery—for a nearly seven-year period.

In short, each of the undue burden factors decisively weigh in favor of quashing the subpoenas. *First*, the CNU Entities are non-parties, and the Court must give special weight to the unwanted burdens thrust upon them in considering the subpoenas—particularly given the number of requests seeking confidential, proprietary, or commercially sensitive information about the CNU Entities' business practices, policies, and procedures. *Second*, the discovery sought is irrelevant. At best, the subpoenas are seeking duplicative information from the CNU Entities that Plaintiff should have in his possession or already received from UHG, or that he could obtain through party discovery. As a result, *third*, Plaintiff has no compelling need for the overbroad and unduly burdensome discovery he seeks from the CNU Entities. *Fourth*, the pending motions to compel arbitration and stay discovery negate the subpoenas because the underlying action may be stayed or dismissed. *Ultimately*, the subpoenas seek to improperly discover information that is irrelevant in the underlying case for the purpose of harassment, fishing, and asserting different claims against non-parties in future litigation. The subpoenas must be quashed.

## CONCLUSION

For the foregoing reasons, CNU Online Holdings, LLC and CNU of California, LLC respectfully request that this Honorable Court grant this motion, quash the non-party subpoenas issued by Plaintiff, and order any further relief that this Court deems just and appropriate.

                                              Respectfully submitted,

                                        By:   */s/ Louis J. Manetti Jr.*
                                                *One of its Attorneys*

Simon Fleischmann
*sfleischmann@lockelord.com*
Louis J. Manetti Jr.
*Louis.manetti@lockelord.com*
**LOCKE LORD LLP**
111 South Wacker Drive
Chicago, Illinois 60606
Phone: 312-443-1726 (LJM)

**CERTIFICATE OF SERVICE**

I, Louis J. Manetti, Jr., an attorney, certify that I caused the foregoing *Motion to Quash Subpoenas* to be served upon the persons listed below on this 29th day of August, 2023, by emailing a true and correct copy of the foregoing document <u>and</u> mailing via USPS delivery to the following parties:

| | |
|---|---|
| Nicholas Ryan Barthel<br>Barthel & Barthel, APC<br>2173 Salk Avenue, Suite 250<br>Carlsbad, CA 92008<br>nick@barthelbarthel.com<br>*Counsel for Plaintiff* | Brendan H. Little<br>Lippes, Mathias, Wexler, Friedman, LLP<br>50 Fountain Plaza, Suite 1700<br>Buffalo, NY 14202<br>blittle@lippes.com<br>*Counsel for Defendant* |
| Ryan Lee McBride<br>Kazerouni Law Group, APC<br>301 E. Bethany Home Rd., Suite C 195<br>Phoenix, AZ 85012<br>ryan@kazlg.com<br>*Co-Counsel for Plaintiff* | Jeff W. Poole<br>Hamrick & Evans LLP<br>9920 Pacific Heights Boulevard, Suite 150<br>San Diego, CA 92121<br>jpoole@hamricklaw.com<br>*Co-Counsel for Defendant* |

*/s/ Louis J. Manetti Jr.*