IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZACHARY POWELL, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Case No. 1:23-cv-06389 ) ) Judge Franklin U. Valderrama |
| v. | ) ) Magistrate Judge Jeannice W. Appenteng |
| UHG 1 LLC, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is non-party respondents CNU Online Holdings, LLC's and CNU of California, LLC's (together the "CNU Entities") motion to quash subpoenas. Dkt. 1. For the reasons explained below, the motion is granted in part and denied in part.

### Background

Plaintiff filed a class-action lawsuit against UHG 1 LLC in the United States District Court for the Southern District of California alleging harmful and unconscionable debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. ECF No. 20 ¶¶ 3, 5, S.D. Cal., No. 23-cv-0086, ("Compl."). According to the complaint, around September 13, 2018, plaintiff took out a $3,500 loan, and entered into a loan agreement with CNU of California d/b/a

CashNetUSA. *Id.* ¶¶ 22, 27. Eventually, the loan's "rights, title and interest" were sold, assigned, and transferred to UHG 1 by CNU Online Holdings. ECF No. 58 at 2, S.D. Cal., No. 23-cv-0086, ("Order Denying Mot. to Compel Arb.").

After plaintiff defaulted on the debt, UHG 1 filed a lawsuit against plaintiff to collect the debt in San Diego Superior Court. Compl. ¶¶ 24, 25. Plaintiff then filed the underlying federal lawsuit alleging: (1) UHG 1 attempted to collect an unconscionable debt; and (2) UHG 1 was not properly assigned the loan, so UHG 1 violated the law by bringing the state-court action. *Id.* ¶¶ 26–33, 41–64, 56, 70–74. Plaintiff alleges the transfer to UHG 1 from CNU Online Holdings was deficient because there is no record of CNU of California selling, assigning, or transferring its rights, title, and interest in the loan to CNU Online Holdings. *Id.* ¶¶ 27–33.

On July 14, 2023, plaintiff served each of the CNU Entities with a subpoena seeking 13 categories of documents and 10 deposition topics regarding the CNU Entities' policies and practices of originating loans and how those loans move through the entities. Dkt. 1 at 5, 1-1, 1-2. The CNU Entities responded with their objections to the subpoenas on July 28, 2023. Dkt. 1 at 5. Despite several discussions, the parties could not resolve their differences over the CNU Entities' objections. Dkt. 10 at 3–4. On August 29, 2023, the CNU Entities filed the instant motion to quash the subpoenas.

On May 21, 2024, the Southern District of California issued an order denying UHG 1's motion to dismiss and compel arbitration. Although the court ultimately denied UHG 1's motion to compel arbitration based on waiver, it rejected plaintiff's

2

argument that UHG 1 did not have standing to enforce the loan agreement's arbitration provision. The court explained, "California law provides that CNU Online Holdings, as a member of CNU of California, may execute instruments on behalf of CNU of California, and thereby bind CNU of California . . . ." Order Denying Mot. to Compel Arb., p. 4. This Court asked the parties to meet and confer to discuss the implications of the order on these proceedings, and to file supplemental briefing. Dkt. 19. In his supplemental brief, plaintiff acknowledges that "the improper transfer claims by Plaintiff are [likely] not going to be viable," and so withdrew certain document requests and deposition topics. Dkt. 20 at 2. Accordingly, the Court need only address the parties' disputes regarding document requests 1, 4–6, 8–12, and deposition topics 1–6, 8.[1]

## Legal Standard

Federal Rule of Civil Procedure 45 governs subpoenas directed to non-parties. The scope of a Rule 45 subpoena "is as broad as what is otherwise permitted under" the discovery rules. *In re: Subpoena Upon Nejame Law, PA.*, No. 16-cv-4619, 2016 WL 3125055, at *2 (N.D. Ill. June 3, 2016); *see also McClendon v. City of Chicago*, 345 F.R.D. 322, 326 (N.D. Ill. 2024). Accordingly, through a Rule 45 subpoena, parties may seek discovery:

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, . . . the parties' relative access to relevant information, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

---

[1] These document requests and deposition topics are the same for each subpoena. Unless otherwise indicated, the Court refers to the subpoenas jointly.

3

Fed. R. Civ. P. 26(b)(1). That said, obtaining information from non-parties via subpoenas is not unlimited—the issuing party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1); *see also HTG Cap. Partners, LLC v. Doe(s)*, No. 15-C-2129, 2015 WL 5611333, at *3 (N.D. Ill. Sept. 22, 2015) ("While parties to a lawsuit must accept the invasive nature of discovery, non-parties experience an unwanted burden.").

Upon the filing of a timely motion, Rule 45(d) provides that a court must quash or modify a subpoena that "requires a person to comply beyond the geographical limits specified in Rule 45(c)" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(ii), (iv). Rule 45(c) provides that a subpoena may command a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person," and that it may command "production of documents [or] electronically stored information . . . at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (2)(A). When determining if a burden is undue, the court must consider whether the burden of compliance exceeds the benefit of production sought. *Tresóna Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at *2 (N.D. Ill. Aug. 17, 2015). To analyze undue burden, courts apply a balancing test, considering: (1) the status as a non-party, (2) the relevance of the discovery sought, (3) the subpoenaing party's need for the information, and (4) the breadth of the request and the burden imposed on the subpoenaed party. *LKQ Corp. v. Kia Am., Inc.*, No. 21 C 3166, 2023 WL 6623363, at *2 (N.D. Ill. Oct. 11, 2023). Non-party

4

status "is a significant factor." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013).

Further, the Court "may" quash or modify a subpoena if it requires the disclosure of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). The party seeking to quash a subpoena bears the burden of "establish[ing] the impropriety of the subpoena." *Architectural Iron Workers' Loc. No. 63 Welfare Fund v. Legna Installers Inc.*, No. 22 C 5757, 2023 WL 2974083, at *1 (N.D. Ill. Apr. 17, 2023). The decision to quash a subpoena is within the district court's sound discretion. *See Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1081 (7th Cir. 2016).

## Discussion

As an initial matter, the Court will address the CNU Entities' argument raised in their supplemental briefing that the subpoena served on CNU Online Holdings should be quashed because CNU Online Holdings' only connection to the underlying case is the fact that it executed transfer documents. Dkt. 21 at 5. The CNU Entities contend that because the transfer issue was allegedly resolved by the Southern District of California, information from CNU Online Holdings is no longer relevant or necessary because the only remaining issue is the unconscionability of the loan. *Id.* This Court takes no position on this point as questions about CNU Online Holdings' connection to the underlying case are issues for the Southern District of California. For purposes of this motion, this Court recognizes that plaintiff served a subpoena on "CNU Online Holdings, LLC d/b/a CashNetUSA,"

5

Dkt. 1-1 at 2, and that the complaint alleges CashNetUSA offered plaintiff the loan, Compl. ¶ 22. The Court finds that the Southern District of California's ruling on the motion to dismiss does not excuse CNU Online Holdings from responding to its subpoena.

Moving on to the CNU Entities' substantive arguments why their subpoenas should be quashed, the arguments include that plaintiff seeks compliance beyond the geographic limits of Rule 45(c) and failed to tender fees as required by Rule 45(b)(1); the topics and requests are overbroad and unduly burdensome because they seek irrelevant information for a seven-year period; the topics and requests seek documents in plaintiff's and UHG 1's control, or better obtained through party discovery; and, the topics and requests seek proprietary and commercially sensitive information.[2] In his response, plaintiff argues the motion to quash is untimely and that it should be transferred to the Southern District of California. For the reasons that follow, the motion is granted in part and denied in part.

### A. The motion is timely and transfer to the Southern District of California is not warranted.

Plaintiff argues the CNU Entities' motion to quash should be denied as untimely because it was not made on the date of compliance.[3] Specifically, plaintiff

---

[2] The CNU Entities make an additional argument that it would be an undue burden to prematurely require them to respond to the subpoenas because UHG 1 had moved to dismiss the underlying lawsuit and compel arbitration instead. Dkt. 1 at 10. This argument is now moot after the Southern California District Court denied UHG 1's motion.

[3] For support, plaintiff cites to three Western District of Washington decisions, none of which are binding on this Court. *See Xu v. Weis*, No. 2:22-cv-00118-TL, 2023 WL 2043540, at *2 (W.D. Wash. Feb. 16, 2023); *U.S. v. King Cnty.*, No. 2:20-cv-00203-RJB, 2022 WL

6

contends that the subpoenas' responses were due August 3, 2023, and therefore the CNU Entities' August 29, 2023 motion was late. The Court does not agree.

Rule 45 allows the subpoena-recipient to file a "timely" motion to quash, Fed. R. Civ. P. 45(d)(3)(A), but this term is undefined. While courts in this district have held that a motion to quash "must be made at or before the time of compliance," *Cent. States, Se. & Sw. Areas Pension Fund v. GWT 2005 Inc.*, No. 1:06-cv-01205, 2009 WL 3255246, at *1 (N.D. Ill. Oct. 6, 2009), others have also reasoned that the lack of a definition for "timely" allows the district court discretion—"look[ing] to all of the circumstances"—to determine whether a motion to quash is considered timely even after the time for compliance has passed. *PrimeSource Bldgs. Prods., Inc. v. Felten*, No. 16 CV 11468, 2018 WL 10425599, at *2 (N.D. Ill. Apr. 27, 2018) (quoting 8A WRIGHT & MILLER, *Federal Practice & Procedure: Civil* § 2035, at 151 (3d ed. 2010)); *see also Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 16-cv-4161, 2017 WL 5478297, at *4 (N.D. Ill. Nov. 15, 2017).

Here, the original subpoenas were served July 14, 2023, with August 3, 2023 as the date for document production and August 22, 2023 as the date for the deposition. Dkt. 1-1, 1-2. The CNU Entities timely served their objections on July 28, 2023. *See* Fed. R. Civ. P. 45(d)(2)(B) (subpoena recipient to serve objections within 14 days of receiving subpoena). After several meet-and-confers, the parties reached an impasse on August 28, 2023, and the CNU Entities filed this motion to

---

16835866, at *2 (W.D. Wash. Nov. 9, 2022); *Smith v. Legacy Partners Inc.*, No. 2:21-cv-00629-JHC-BAT, 2022 WL 1194125, at *2 (W.D. Wash. Apr. 21, 2022).

quash the next day. Considering the circumstances of the parties' conduct, the Court finds the motion to quash timely.

The Court further denies plaintiff's request to transfer this action to the Southern District of California pursuant to Rule 45(f). "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).[4] As the party requesting transfer, plaintiff bears the burden to show that exceptional circumstances exist. *Lang v. Colonial Penn Life Ins. Co.*, No. 21-cv-6290, 2022 WL 4465719, at *2 (N.D. Ill. Sept. 26, 2022). The committee notes to Rule 45(f) clarify that the court's "prime concern should be avoiding burdens on local nonparties subject to subpoenas," and that the court should not transfer unless the movant proves that countervailing interests "outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." Fed. R. Civ. P. 45(f), Advisory Committee's Note to 2013 amendments. However, "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.*

Here, the CNU Entities do not consent to transfer, and plaintiff has not carried his burden to present exceptional circumstances that warrant transfer. Plaintiff argues transfer is appropriate because the subpoenas request information

---

[4] Plaintiff does not dispute that the place of compliance is located in the Northern District of Illinois and that this Court may consider the motion. Dkt. 5 at 11.

8

about the assignment of the debt that is central to the underlying case, transfer will avoid piecemeal litigation, and the Southern District of California "is familiar with all claims and procedural posture of the case." Dkt. 5 at 12–13. However, the Southern District of California has resolved the assignment issue, and the only issue before this Court is whether the CNU Entities should respond to the subpoenas. Thus, the Court finds that ruling on the CNU Entities' motion will not interfere with the Southern District of California's management of the case or result in piecemeal litigation. And although the Southern District of California may be more familiar with the case, the CNU Entities' objections do not require a familiarity with the underlying litigation sufficient to warrant transfer. *See Lang*, 2022 WL 4465719, at *3. The Court therefore finds that the CNU Entities' interest in obtaining local resolution of the motion outweighs the concerns raised by plaintiff.

> **B.    The subpoenas are not procedurally invalid.**

The CNU Entities contend the subpoenas must be quashed because they are procedurally invalid under Rule 45(c) and (b)(1). The CNU Entities' principal place of business, documents, and corporate representatives are in Chicago, Illinois. Dkt. 1 at 7. Accordingly, the subpoenas violate the geographical limitations of Rule 45(c) because they list Costa Mesa, California as the place for production of documents and West Palm Beach, Florida as the place for deposition—both beyond 100-miles of Chicago, Illinois. The CNU Entities argue further as another basis to quash, that plaintiff did not tender the required witness or mileage fees according to Rule

9

45(b)(1). Dkt. 1 at 9. In response, plaintiff contends that he cured these violations by re-issuing the subpoenas on September 14, 2023 listing a Chicago address as the place for production and deposition, and tendering the Rule 45(b)(1) fees. Dkt. 5 at 6–7; Dkt. 5-3. Despite the CNU Entities' arguments to the contrary, the Court finds that plaintiff's actions "cure[ ] any previous noncompliance with Rule 45." *Varlitskiy v. Cnty. of Riverside*, No. 19 cv 2099, 2022 WL 18284986, at *3 (C.D. Cal. Dec. 14, 2022). In any event, Rule 45(d) permits the compliance court to modify a subpoena that violates the geographical limits. Fed. R. Civ. P. 45(d)(3)(A)(ii). Accordingly, the Court rejects the CNU Entities' argument that the subpoenas are procedurally invalid, and modifies the subpoenas to reflect 203 North LaSalle Street, Suite 2100, Chicago, Illinois as the place for production and 1 North Franklin Street #3000, Chicago, Illinois as the place for deposition testimony, as indicated in Docket 5-3.

### C. The information sought is relevant, but the requests are overbroad.

The CNU Entities argue the subpoenas are overbroad and unduly burdensome because they seek documents and information for a seven-year period, and the information sought is "wholly irrelevant" to plaintiff's allegations. Dkt. 1 at 10. Specifically, the CNU Entities argue that "*none* of these requests impact whether the interest rate expressed in *Plaintiff's loan agreement* was unconscionably high on its face—that can be discerned from the loan document itself." Dkt. 1 at 11 (emphasis in original). While the Court agrees the requests seeking information for a seven-year period are overbroad, it does not find the requests "wholly irrelevant."

10

Among others, plaintiff brings a claim under the UCL on behalf of himself and the class, alleging UHG 1 violated the UCL's "unlawful" prong "[b]y knowingly and intentionally buying and attempting to collect loans with unconscionable interest rates[.]" Compl. ¶ 49. Plaintiff argues his subpoenas request information relating to substantive and procedural unconscionability issues. Dkt. 5 at 9. Under California law, unconscionability is "a flexible standard in which the court looks not only at the complained-of term but also at the process by which the contractual parties arrived at the agreement and the larger context surrounding the contract, including its commercial setting, purpose, and effect." *De La Torre v. CashCall, Inc.*, 422 P.3d 1004, 1009 (Cal. 2018). California's unconscionability doctrine applies to "'the provisions of a loan contract,' one of which is undeniably the interest rate on the loan." *Id.* at 1011–12.

Unconscionability is measured both procedurally and substantively. *Id.* at 1014. "[T]he procedural aspect . . . refers to an absence of meaningful choice on the part of one of the parties which may be evidenced by (1) oppression, that is, an inequality of bargaining power resulting in an absence of meaningful choice, or (2) surprise, which occurs when the objectionable term is hidden in the document." *Carboni v. Arrospide*, 2 Cal. Rptr. 2d 845, 850 (Cal. Ct. App. 1991). "'Substantive' unconscionability, on the other hand, refers to an overly harsh allocation of risks or costs which is not justified by the circumstances under which the contract was made." *Id.* at 848. Contrary to the CNU Entities' argument that all that is relevant is the interest rate on the loan agreement, Dkt. 21 at 4, California law indicates

11

that unconscionability goes beyond the face of the contract into "the process by which the contractual parties arrived at the agreement and the larger context surrounding the contract." *De La Torre*, 422 P.3d at 1009; *see also id.* at 1014 ("Even where a party complains of a single contract clause, the court usually must examine the bargaining process for any procedural unfairness.").

Here, plaintiff alleges the CNU Entities "set the terms of the loan." Dkt. 5 at 14. Because the scope of subpoenas is as broad as Rule 26 permits, the Court finds that document requests 1, 4–6, 8–10, and 12 and deposition topics 1–6 and 8 seek information relevant to the unconscionability elements and that plaintiff has established a need for this information. Accordingly, the Court denies the CNU Entities' motion to quash these requests.

However, given the CNU Entities' non-party status, the Court will grant the motion regarding request 11 as unduly burdensome and irrelevant. The request seeks "[a]ll documents showcasing the interest rates the average consumer obtains on a standard loan." Requiring the CNU Entities produce all documents on interest rates for "the average consumer" is ambiguous and not proportional to the needs of the case. Although plaintiff alleges to represent a class, this document request is not tailored to the proposed class definition or his individual claims.

Finally, the Court finds plaintiff's requested time period of September 2016 through the present overbroad and unduly burdensome. In his complaint, plaintiff asserts a class consisting of "[a]ll persons in the State of California from whom [UHG 1] has attempted to collect a loan with an annual percentage rate (APR)

12

exceeding 90 percent in the four years preceding the filing of the Complaint." Compl. at 7. Given the complaint was filed in 2023, the Court grants the CNU Entities' motion in part and modifies the subpoenas such that the time period is from September 2019 to present.

### D. The information sought is not within plaintiff's or UHG 1's control.

The CNU Entities further argue the subpoenas should be quashed because they seek information plaintiff possesses and information that should be sought from UHG 1 in discovery. Dkt. 1 at 13–14. Plaintiff contends that he is requesting information about his and the putative class's debts "while they were owned by [the] CNU Entities" and which UHG 1 "does not have access to." Dkt. 5 at 11. The Court finds that the subpoenas seek the CNU Entities' internal documents and communications about plaintiff's loan, and their policies and procedures surrounding contract negotiations, notifying consumers of interest rates, and processing loan applications. Nothing in the CNU Entities arguments establish any basis for this Court to conclude that plaintiff or UHG 1 would possess this information. Therefore, the Court denies the CNU Entities' motion as it relates to document requests 1, 4, 6, 8–10, 12. However, the Court grants the motion as to document request 5 because this request seeks "[a]ll communications between [the CNU Entities] and Plaintiff." These communications are within plaintiff's custody and control, and so this information "is obtainable from some other source that is more convenient [and] less burdensome." *Legg*, 2015 WL 4911093, at *3.

> **E. The CNU Entities do not establish the information sought is proprietary or commercially sensitive, and the protective order sufficiently protects the CNU Entities' interests.**

Last, the CNU Entities argue the subpoenas should be quashed because they seek proprietary and commercially sensitive information. A court may quash a subpoena if it seeks the disclosure of a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(d)(3)(B)(i). "There is, however, 'no absolute privilege for trade secrets or similar confidential information.'" *Soto v. Kale Realty, LLC*, 13 C 8002, 2016 WL 11953040, at *3 (N.D. Ill. July 25, 2016) (quoting *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 671 (S.D. Tex. 1990)). "[A] party seeking protection of their confidential information bears the burden of establishing two things: (1) the confidentiality of the material, and (2) the harm associated with its disclosure." *Id.* (internal citations omitted). The burden would then shift to the party seeking the information to show the information "is relevant and necessary to the case." *Id.* If this is established, the court then weighs the need for the information against any harm which could result from disclosure. *Id.*

The only argument the CNU Entities proffer is that they "derive substantial economic and strategic value from these policies and procedures and take substantial efforts to safeguard this information in order to maintain this competitive advantage." Dkt. 1 at 12. However, the CNU Entities' contention alone does not establish that its policies and procedures are trade secrets or confidential

14

research, development, or commercial information as Rule 45 requires, nor does it demonstrate the harm associated with disclosure.

Even if the CNU Entities met their burden, the Court would nonetheless deny the motion on this basis because the relevancy and necessity of the information outweighs the purported harm. As explained above, the subpoenas, specifically requests 1, 4, 6, 8–10, and 12 and deposition topics 1–6 and 8, seek information relevant to the alleged unconscionability of the loan and plaintiff has shown his need for this information. Further, courts have found that confidentiality orders "sufficiently protect[ ] the sensitivity of documents that may implicate . . . confidentiality or privacy concerns." *Legna Installers*, 2023 WL 2974083, at \*5. In the underlying lawsuit, the Southern District of California entered a protective order which allows "any third party [to] have the right to designate as 'Confidential' and subject to this Order any information, document, or thing, or portion of any document or thing that contains trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information." ECF No. 34 at 2, S.D. Cal., No. 23-cv-0086. The protective order also contains an "Attorneys' Eyes Only" designation. *Id.* at 2–3. The Court is satisfied the protective order contemplates the type of documents that may be responsive to the subpoenas. For all these reasons, the Court denies the CNU Entities' motion to quash on the basis that the information sought is proprietary and commercially sensitive. *See FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 19 CV 50122, 2021 WL 5283946, at \*4 (N.D. Ill. Aug. 10, 2021) (denying a motion to quash where there was a protective order in

15

place which covered "trade secrets, confidential business information, or other proprietary information").

## CONCLUSION

For the reasons stated above, the CNU Entities' motion to quash is granted in part and denied in part. Within 30 days of this order, the CNU Entities shall respond to document requests 1, 4, 6, 8–10, and 12, and designate a representative or representatives to be deposed on topics 1–6 and 8. The place for production and depositions shall be at the locations listed in the subpoenas served on September 14, 2023, or some other agreeable location within 100-miles of the CNU Entities' principle place of business, 175 West Jackson Boulevard, Chicago, Illinois.

**So Ordered.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**